UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| Guillermo Rocha, individually and on behalf of all others similarly situated, <br><br> Plaintiff, <br><br> - against - <br><br> Perry Ellis International, Inc., <br><br> Defendant | 3:21-cv-50278 <br><br><br> Class Action Complaint <br><br> Jury Trial Demanded |

Plaintiff alleges upon information and belief, except for allegations pertaining to plaintiff, which are based on personal knowledge:

1.  Perry Ellis International, Inc. ("defendant") manufactures, markets, labels and sells shirts represented to contain between sixty (60) and sixty-five (65) percent Pima cotton, with the remainder consisting of polyester and/or other fabrics, under the Perry Ellis brand ("Product").

2.  Accurate disclosure of clothing's fiber composition is required under the Textile Fiber Products Identification Act ("Textile Act"), 15 U.S.C. §§ 70, *et seq.*, and its accompanying regulations. 16 C.F.R. Part 303.

3.  The main criteria to identify the type of cotton or other fiber is the fiber length.

4.  The length of cotton fiber affects its qualities and price – the longer the cotton fiber, the stronger, softer, and more durable the resulting fabric.

5.  This creates incentives for manufacturers to mix cotton byproducts and shorter fiber cotton with Pima cotton to gain additional profits at the expense of consumers.

6.  However, the "Single-Fiber-Test" adopted by ASTM, a global standards body, can determine the length and length distribution of manufactured staple fibers in clothing.[1]

---

[1] D5103.

7. Pima cotton (*Gossypium barbadense L*), an extra-long staple ("ELS") barbadenses, is between approximately 1.2 and 1.44 inches.[2]

8. Laboratory analysis of an exemplar Pima cotton product sold by Defendant, and substantially similar or identical to that purchased by Plaintiff, purporting to contain 61 percent Pima cotton, contained significantly less Pima cotton than represented.[3]

9. The Product did not contain any fibers exceeding 1.2 inches, with an average fiber length of 0.856 inches.

10. Even adjusting for a twenty-five (25) percent reduction of the fibers during the manufacturing processes, the Product would only contain a maximum of fifty-five (55) percent Pima cotton.

11. These assumptions are generous and assume that all fibers within the lower limit length group of 1.120 inches exceed 1.2 inches, which is unlikely.

12. The testing only measured the length of the cotton fibers, and not the polyester or non-cotton fabric components.

13. This means the total number of fibers which would qualify as Pima cotton would be only 33.55%.[4]

14. Either way, the percent of Pima cotton used in the Product is significantly below the advertised figure.

15. The Product is instead made from a significant amount of less expensive shorter cotton fibers or cotton byproduct fibers.

16. No reasonable consumer will expect that clothing advertised as containing between

---

[2] ASTM International, D7641, Standard Guide for Textile Fibers.
[3] STYLE: 4CHK7701RT COLOR: 074-ALLOY HEATHER Barcode 9708289129 PO: RT21075; 61% PIMA COTTON/35% POLYESTER/4% ELASTANE.
[4] 55 Pima cotton fibers * 61/100 (percent Pima cotton claimed) = 33.55%.

61-65 percent Pima cotton would contain significantly less Pima cotton than promised.

17. Reasonable consumers must and do rely on a company to honestly identify and describe the components and features of the Product.

18. The value of the Product that plaintiff purchased was materially less than its value as represented by defendant.

19. Defendant sold more of the Product and at higher prices than it would have in the absence of this misconduct, resulting in additional profits at the expense of consumers.

20. Had Plaintiff and proposed class members known the truth, they would not have bought the Product or would have paid less for them.

21. The Product is sold for a price premium compared to other similar products, approximately $35.99 per shirt, a higher price than it would otherwise be sold for, absent the misleading representations and omissions.

## Jurisdiction and Venue

22. Jurisdiction is proper pursuant to Class Action Fairness Act of 2005 ("CAFA"). 28 U.S.C. § 1332(d)(2).

23. Upon information and belief, the aggregate amount in controversy exceeds $5 million, including any statutory damages, exclusive of interest and costs.

24. Plaintiff Guillermo Rocha is a citizen of Illinois.

25. Defendant Perry Ellis International, Inc. is a Florida corporation with a principal place of business in Doral, Miami-Dade County, Florida.

26. The parties are citizens of different states.

27. Venue is proper because plaintiff resides in this district and a substantial portion of the events giving rise to the claims occurred in this district.

Parties

28. Plaintiff Guillermo Rocha is a citizen of Rockford, Winnebago County, Illinois.

29. Defendant Perry Ellis International, Inc., is a Florida corporation with a principal place of business in Doral, Florida, Miami-Dade County.

30. Defendant is one of the largest sellers of clothing in the world.

31. Defendant's products are sold from its own stores and outlets, third-parties such as Macy's, and available online.

32. Manufacturers of textile products, like Defendant, must maintain records sufficient to substantiate the claims on its fiber content tags and labels. See *id*. at §70d.

33. Any guarantee of fiber content by a supplier is insufficient for Defendant to rely on when selling clothing to the public. *See* 16 C.F.R. § 303.39.

34. Plaintiff bought the Product on one or more occasions within the statute of limitations for each cause of action alleged, at stores including the Perry Ellis Outlet, 1650 Premium Outlets Blvd #1115, Aurora, IL 60504, between September and November 2020, among other times.

35. Plaintiff bought the Product at or exceeding the above-referenced price.

36. Plaintiff has sensitive skin and seeks clothing which contains higher quality cotton and fabrics.

37. Plaintiff sought to purchase a product that contained the amount of Pima cotton promised on the label, and not a significant amount and/or percentage less.

38. Defendant's false, deceptive and misleading claim about the Pima cotton percentage in the Product violates the Textile Act and the FTC Act.

39. Defendant did not disclose accurate and truthful fiber content tags on its Pima cotton products, or on its labeling, and upon information and belief, failed to maintain required records

4

substantiating the fiber content of the Products at each stage of the manufacturing process.

40. Plaintiff did not, nor could be expected to know, that the Product's Pima cotton percentage differed significantly from the labeling.

41. Plaintiff would not have purchased the Products if he knew the representations were false and misleading.

42. Plaintiff chose between Defendant's Product and other similar products which were represented similarly, but which did not misrepresent their attributes and/or lower-priced products which did not make the claims made by Defendant.

43. The Product was worth less than what Plaintiff paid and he would not have paid as much absent Defendant's false and misleading statements and omissions.

44. Plaintiff intends to, seeks to, and will purchase the Product again when he can do so with the assurance that Product's representations are consistent with its composition.

Class Allegations

45. The class will consist of all Illinois residents who purchased the Product during the statutes of limitations for each cause of action alleged.

46. Common questions of law or fact predominate and include whether defendant's representations were and are misleading and if plaintiff and class members are entitled to damages.

47. Plaintiff's claims and basis for relief are typical to other members because all were subjected to the same unfair and deceptive representations and actions.

48. Plaintiff is an adequate representative because his interests do not conflict with other members.

49. No individual inquiry is necessary since the focus is only on defendant's practices and the class is definable and ascertainable.

50. Individual actions would risk inconsistent results, be repetitive and are impractical to justify, as the claims are modest relative to the scope of the harm.

51. Plaintiff's counsel is competent and experienced in complex class action litigation and intends to protect class members' interests adequately and fairly.

52. Plaintiff seeks class-wide injunctive relief because the practices continue.

Illinois Consumer Fraud and Deceptive Business Practices Act
("ICFA"), 815 ILCS 505/1, et seq.

(Consumer Protection Statute)

53. Plaintiff incorporates by reference all preceding paragraphs.

54. Plaintiff and class members desired to purchase powdered a shirt which contained the percentage of Pima cotton represented, within a small variation.

55. Defendant's false and deceptive representations and omissions are material in that they are likely to influence consumer purchasing decisions.

56. Defendant misrepresented the Product through statements, omissions, ambiguities, half-truths and/or actions.

57. Plaintiff relied on the representations.

58. Plaintiff and class members would not have purchased the Product or paid as much if the true facts had been known, suffering damages.

Breaches of Express Warranty,
Implied Warranty of Merchantability and
Magnuson Moss Warranty Act, 15 U.S.C. §§ 2301, et seq.

59. The Product was manufactured, labeled and sold by defendant and expressly and impliedly warranted to plaintiff and class members that it which contained the percentage of Pima cotton represented, within a small variation.

6

60. Defendant had a duty to disclose and/or provide non-deceptive descriptions and marketing of the Product.

61. This duty is based on Defendant's outsized role in the market for this type of Product.

62. Plaintiff provided or will provide notice to defendant, its agents, representatives, retailers and their employees.

63. Defendant received notice and should have been aware of these issues due to complaints by regulators, competitors, and consumers, to its main offices.

64. The Product did not conform to its affirmations of fact and promises due to defendant's actions and were not merchantable because they were not fit to pass in the trade as advertised.

65. Plaintiff and class members would not have purchased the Product or paid as much if the true facts had been known, suffering damages.

## Negligent Misrepresentation

66. Defendant had a duty to truthfully represent the Product, which it breached.

67. This duty is based on defendant's position, holding itself out as having special knowledge and experience this area.

68. The representations took advantage of consumers' cognitive shortcuts made at the point-of-sale and their trust in defendant.

69. Plaintiff and class members reasonably and justifiably relied on these negligent misrepresentations and omissions, which served to induce and did induce, their purchase of the Product.

70. Plaintiff and class members would not have purchased the Product or paid as much if the true facts had been known, suffering damages.

### Fraud

71. Defendant misrepresented and/or omitted the attributes and qualities of the Product, that they which contained the percentage of Pima cotton represented, within a small variation

72. Because Defendant controls the Product's manufacturing, labeling, sales and marketing, Ralph Lauren possesses specialized knowledge regarding the content of the product and is in a superior position to learn about the product.

73. Moreover, the records Ralph Lauren must maintain by law provide Ralph Lauren with actual knowledge of the falsity of the 100% Pima cotton claims.

74. Thus, Defendant knew, or should have known, or was willfully ignorant of the fact that the 100% Pima cotton claim is false, deceptive, and misleading.

75. Defendant's fraudulent intent is evinced by its knowledge that the Product was not consistent with its representations.

### Unjust Enrichment

76. Defendant obtained benefits and monies because the Product was not as represented and expected, to the detriment and impoverishment of plaintiff and class members, who seek restitution and disgorgement of inequitably obtained profits.

### Jury Demand and Prayer for Relief

Plaintiff demands a jury trial on all issues.

**WHEREFORE**, Plaintiff prays for judgment:

1. Declaring this a proper class action, certifying plaintiff as representative and the undersigned as counsel for the class;

2. Entering preliminary and permanent injunctive relief by directing defendant to correct the challenged practices to comply with the law;

3. Injunctive relief to remove, correct and/or refrain from the challenged practices and

representations, and restitution and disgorgement for members of the class pursuant to the applicable laws;

4. Awarding monetary damages, statutory damages pursuant to any statutory claims and interest pursuant to the common law and other statutory claims;

5. Awarding costs and expenses, including reasonable fees for plaintiff's attorneys and experts; and

6. Other and further relief as the Court deems just and proper.

Dated: July 14, 2021

Respectfully submitted,

Sheehan & Associates, P.C.
/s/Spencer Sheehan
60 Cuttermill Rd Ste 409
Great Neck NY 11021-3104
Tel: (516) 268-7080
Fax: (516) 234-7800
spencer@spencersheehan.com